# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

ANDREW LEE WATTS, )
  )
      Petitioner, )
  ) Case No. 2:14-CV-037-JVB
v. )
  )
WARDEN, )
  )
      Respondent. )

## OPINION AND ORDER

Andrew Lee Watts, a *pro se* prisoner, filed a petition for writ of habeas corpus challenging his conviction (64D05-1106-FA-5266) and 38 year sentence by the Porter Superior Court for dealing cocaine. In it he raises four grounds.

In his First Ground, Watts argues that the trial court abused its discretion when it denied his requests in open court to plead guilty on the first and second days of trial. Watts presented this claim to the State courts. The Court of Appeals of Indiana rejected it by explaining:

> On the morning of trial, when questioned by the trial court, Watts vacillated and expressed much hesitancy regarding whether he wanted to accept a plea agreement that had been offered by the State. Rather than accept that agreement, Watts both rejected the agreement as offered and counteroffered his own terms. After the trial court recessed to allow the parties to continue to negotiate, Watts still expressed hesitancy and responded "I don't know" when asked whether he wanted to accept the State's most recent offer to plead guilty to class B felony dealing in cocaine with a sentence of twenty years with ten years suspended. During continued questioning, Watts maintained his indecisive stance, with the trial court finally concluding that Watts's "vacillation" showed a "strategic and manipulative course of conduct." By the time [on the second day of trial] Watts expressed what appeared to be perhaps a true desire to plead guilty, the State responded that the previous plea offer had expired and that no plea offer remained open.

*Watts v. State*, 997 N.E.2d 1185 (Ind. Ct. App. 2013) (table); DE 13-7 at 14 (citations omitted).

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 575 U.S. __, __; 135 S.Ct. 1372, 1376 (2015) (quotation marks and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Here, Watts argues that the State court decision was an unreasonable application of *Santobello v. New York*, 404 U.S. 257 (1971). However, "a defendant has no right to be offered a plea, *see Weatherford* [*v. Bursey*], 429 U.S. [545,] 561, nor a federal right that the judge accept it, *Santobello v. New York,* 404 U.S. 257, 262 (1971)." *Missouri v. Frye*, 132 S. Ct. 1399, 1410 (parallel citations omitted). As *Santobello* explained, "There is, of course, no absolute right to have a guilty plea accepted. A court may reject a plea in exercise of sound judicial discretion." *Santobello*, 404 U.S. at 262. Here, it was not an unreasonable application of *Santobello* for the Court of Appeals to have affirmed the trial court's rejection of the plea.

> AEDPA's standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. *And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice*. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

2

*Woods v. Donald*, 575 U.S. __, __; 135 S.Ct. 1372, 1376 (2015). (quotation marks and citations omitted) (emphasis added).

Watts argues that:

> The Indiana Appeals Court misunderstands the Petitioners "vacillating and hesitancy as a strategic and manipulative course of conduct," as noted in the state court proceedings on the eve of trial the state through defense attorney verbally offered a plea agreement, but on the day of trial at the Petitioners request the trial court permitted the state and Petitioner to continue with plea negotiations. Of course, the Petitioners prevaricated through the plea agreement discussions since in nature that would be the platform to seek the best agreement, but when the state prepared the agreement both parties signed and presented it to the trial court.
> The Indiana Court of Appeals decision on this issue is unreasonable, due to the fact the same trial court who denied the plea agreement due to its belief the Petitioner would later recant it, just a day later in responding to a Motion to Reconsider accepting the plea agreement declared it now "really believed" he wanted to plead guilty of his own free will. The trial court then questioned the state as to its position regarding the plea agreement and the state then declared that there was no plea agreement that remained open.

DE 17 at 3-4 (citation omitted). Watts is correct that his vacillation on the first day of trial could have been interpreted differently. However, it was not unreasonable for the trial judge to believe he was insincere on the first day of trial and yet be convinced of his sincerity on the second day even though (as Watts acknowledges) the plea offer had already been withdrawn by then. Nevertheless, because the State court rulings were neither objectively unreasonable nor lacking in justification, he cannot obtain habeas corpus relief on this claim.

In his Second Ground, Watts argues that the trial court abused its discretion when it permitted the prosecution to file an amended information increasing the dealing cocaine charge from a Class B Felony to a Class A Felony. The respondent argues that because State law governs when and how an information is amended, the argument is not a basis for habeas corpus relief. In *Shaw v. Wilson*, 721 F.3d 908 (7th Cir. 2013), the Seventh Circuit recognized that

3

amending an information was a State law question. "Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law." *Wilson v. Corcoran*, 562 U.S. 1, 1 (2010). Therefore this ground is not a basis for habeas corpus relief.

Nevertheless, Watts argues that permitting the amendment violated *Fajardo v. State*, 859 N.E. 2d 1201 (Ind. 2007). However, this court cannot grant habeas corpus relief on this claim even if *Fajardo* was violated because "federal habeas corpus relief does not lie for errors of state law." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) *citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991) *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).) In addition Watts argues that the amendment does implicate federal constitutional rights because it was made less than three weeks before a scheduled trial date. Though due process can be violated where a defendant is compelled to proceed to trial unprepared, "it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *see also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) ("[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." (quotation marks and citation omitted)). However, as Watts notes, this is not what happened to him. DE 17 at 5. In his case, a continuance was granted and he had nearly five more months to prepare for trial. Therefore the amendment of the information does not implicate due process concerns and it is not a basis for habeas corpus relief.

In his Third Ground, Watts argues that the trial court abused its discretion when it denied him the opportunity to proceed *pro se* during his State criminal trial. Here is how the Court of Appeals of Indiana described the relevant events related to this claim:

4

> Watts then stated, "I would rather die than have him as my attorney."
>
> The trial court then informed [Watt's Defense Attorney] Truitt that he no longer needed to represent Watts and that he could leave his file with Watts. However, just as prospective jurors began to enter the room for jury selection, Watts kneeled on the floor in the middle of the courtroom and began pleading, "Guidos, come get me out of here. Take me out. I'm out. Get me out please" and "In Jesus name could I please leave?" The trial court informed Watts that he was waiving his right to be present and had Watts removed from the courtroom. The court then requested Truitt to continue to represent Watts and proceeded with voir dire. Watts requested to return to the courtroom after voir dire, and the trial court granted that request. He conceded that he wished for Truitt to stay and represent him at that point.
>
> On the second morning of trial, . . . Watts informed the trial court that he wanted to proceed pro se. The court again advised Watts of the risks of self-representation. Watts indicated that he understood and that he knew that he would not receive another attorney. When directly asked whether it was his choice to represent himself, Watts replied, "Yes, ma'am." The trial court granted his request to proceed pro se and instructed the jury that Watts had decided to waive his right to counsel and that it should not infer anything from the exercise of that right.

DE 13-7 at 8-9 (citations omitted). Watts does not dispute this chronology of events. On the first day of trial, he asked to proceed without counsel and the trial court granted that request. Clearly this was not a denial of his right to proceed *pro se*. Then he became disruptive and the trial court had him removed. The United States Supreme Court has recognized that this is an appropriate method for dealing with disruptive criminal defendants.

> It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

*Illinois v. Allen*, 397 U.S. 337, 343-44 (1970). Having justifiably and constitutionally removed Watts from the courtroom because of his disruptive behavior, the trial court recognized that he was no longer capable of representing himself. As a result, the trial judge appointed an attorney to represent him.

> [T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.

*Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008). Though Watts did not suffer from a long-term severe mental illness which prevented him from representing himself for the whole trial, he was nevertheless at that time, temporarily as incapable one who did. Clearly it was not the trial judge who prevented Watts from proceeding *pro se*. Rather it was Watts himself because an "accused [cannot] be permitted by his disruptive conduct indefinitely to avoid being tried on the charges brought against him." *Illinois v. Allen*, 397 U.S. 337, 346 (1970). Then, after Watts had calmed down, he returned to the courtroom on the first day of trial and conceded that he wanted his defense attorney to continue to represent him. Again, this clearly did not deny him the right to proceed *pro se*. The next day, he asked to proceed *pro se* and the trail court granted his request. Obviously this did not deny him the opportunity to proceed *pro se*. Because the trial court at no time denied him the right to proceed *pro se*, this ground is not a basis for habeas corpus relief. Though the exact details of his trial do not match those of prior United States Supreme Court cases, "where the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Woods v. Donald*, 575 U.S. __, __; 135 S.Ct. 1372,

6

1377 (2015) (quotation marks, brackets and citations omitted). Here, neither the trial court nor the Court of Appeals of Indiana was unreasonable in their determinations that Watts' was not denied his right to proceed *pro se*.

In his Fourth Ground, Watts argues that he was subjected to double jeopardy because the trial could have declared a mis-trial rather than continuing with appointed counsel after he was removed from the courtroom. The respondent argues that this claim is procedurally defaulted. Watts argues that it is not because "double jeopardy" was mentioned in the briefs submitted to the Court of Appeals of Indiana. However,

> Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, *see* 28 U.S.C. § 2254(b)(1)(A), is the duty to fairly present his federal claims to the state courts. *Baldwin v. Reese*, 541 U.S. 27 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in the federal habeas proceeding does it make sense to speak of the exhaustion of state remedies." *Id.* at 276. Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings. *Boerckel*, 526 U.S. at 845. This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory. *Ibid*.

*Lewis v. Sternes*, 390 F.3d 1019, 1025-1026 (7th Cir. 2004) (parallel citations omitted). Here, Watts did not present this issue to the Indiana Supreme Court in his petition to transfer. Therefore it is procedurally defaulted and cannot be a basis for habeas corpus relief.

Nevertheless, even if the claim had been exhausted, it would still not be a basis for habeas corpus relief. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Watts acknowledges the first problem with his double jeopardy argument – the trial judge did not

7

declare a mis-trial and Watts was only tried once, not twice. Therefore double jeopardy is not applicable to this case. Moreover, even if he had been granted the mis-trial for which he now wishes, because it would have been necessitated by his own disruptive behavior, that would not have barred his retrial. "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982). Thus there are no circumstances under which a double jeopardy claim could have been a basis for habeas corpus relief given Watts' behavior during his trial.

Finally, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, the court must consider whether to grant a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As previously explained, none of Watts' claims have any merit. Reasonable jurists would not debate these findings. Therefore this case does not deserve encouragement to proceed further.

For the foregoing reasons, the habeas corpus petition is **DENIED**. This case is **DISMISSED**. Andrew Lee Watts is **DENIED** a certificate of appealability.

**SO ORDERED** on August 25, 2015

 S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE